IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

IEA CONSTRUCTORS, LLC, and
INFRASTRUCTURE AND ENERGY
ALTERNATIVES, INC.,

                    Plaintiffs,                          OPINION and ORDER

          v.                                                 23-cv-588-jdp

WESTWOOD PROFESSIONAL SERVICES, INC.,

                    Defendant.

---

This case arises out of four "utility-scale solar projects" in Georgia. Plaintiff IEA Constructors, LLC and Infrastructure and Energy Alternatives, Inc. were general contractors for these projects. Plaintiffs hired defendant Westwood Professional Services, Inc. to prepare plans for stormwater management and sediment control. Plaintiffs allege that Westwood's plans were deficient, causing damages in the form of "costs to investigate, repair and maintain the deficient stormwater control and sediment storage at the Projects." Dkt. 1-1, ¶ 23. Plaintiffs also allege that they may be forced to pay damages to property owners who were harmed by Westwood's deficient work, including in *H&L Farms LLC v. Silicon Ranch Corporation*, No. 21-cv-134 (M.D. Ga.). Plaintiffs assert claims for breach of contract, negligence, and indemnification. Plaintiffs are citizens of Indiana and Delaware, Westwood is a citizen of Minnesota, and it is reasonable to infer that the amount in controversy is more than $75,000, so the court may exercise jurisdiction under 28 U.S.C. § 1332.

Two related motions are before the court. First, Westwood moves under 28 U.S.C. § 1404 to transfer the case to the Middle District of Georgia, primarily on the ground that the case is related to *H&L Farms*. Dkt. 12. Second, plaintiffs move for leave to amend their

complaint to drop any claim for indemnification based on damages incurred in *H&L Farms*. Dkt. 15.

Westwood's motion to transfer would have some traction under a typical § 1404 analysis. All of the projects at issue are in Georgia, and a lawsuit that is related to one of those projects and includes plaintiffs and Westwood is pending in the Middle District of Georgia. On the other hand, plaintiffs chose this forum, and Westwood waited nearly seven months before seeking to change the venue, so a transfer now could be unfairly prejudicial. But regardless of which forum a traditional § 1404 analysis would favor, that is not the question before the court because the parties previously agreed to litigate their disputes in Wisconsin. "In all but the most unusual cases . . . the interest of justice is served by holding parties to their bargain," and enforcing a forum-selection clause. *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 66 (2013). Westwood has not shown that this is one of those rare cases in which the public interest factors point so strongly in favor of a different forum that it is appropriate to disregard the forum-selection clause. The court will deny the motion to transfer.

As for the motion for leave to amend, the court will grant the motion because the parties agree that any claim based on *H&L Farms* is not ripe.

ANALYSIS

**A. Westwood's motion to transfer**

Westwood's motion to transfer relies on 28 U.S.C. § 1404, which allows the district court to transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice." Generally, § 1404(a) "permits a 'flexible and individualized analysis' and affords

district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." *Research Automation, Inc. v. Schrader-Bridgeport International, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The court may consider many factors related to both the convenience of the parties and judicial economy. *Id.*

In this case, plaintiffs say that the usual analysis does not apply because the parties' agreements include a forum-selection clause that requires the parties to litigate their disputes "in the state or federal courts sitting in Dane County, Wisconsin." *See*, *e.g.*, Dkt. 1-1, at 125. Westwood does not dispute that the forum-selection clause is mandatory rather than permissive. Instead, Westwood contended in its opening brief that plaintiffs do not have the right to enforce the forum-selection clause because they are not signatories to the agreement; the agreements are signed by Westwood, IEA Renewable Energy, Inc., and White Construction, Inc.

In their opposition brief, plaintiffs contend that they can enforce the forum-selection clause for the following reasons: (1) IEA Renewable Energy, Inc. is simply the former name of IEA Constructors, LLC; (2) the services agreements between IEA Constructors and Westwood incorporate the forum-selection clause, something that Westwood admitted in its answer; (3) Infrastructure and Energy Alternatives is a third-party beneficiary to the services agreements, so it may also enforce the forum-selection clause. Dkt. 13, at 14–17. Westwood does not respond to any of these arguments in its reply brief, and it does not otherwise continue to press its contention that plaintiffs do not have the right to enforce the forum-selection clause. The court will construe Westwood's silence to mean that it is conceding the issue, *see*

*Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001), and the court will assume that the forum-selection clause applies to this dispute.

There are two steps to determining whether to transfer a case under 28 U.S.C. § 1404(a) when the parties have an agreement with a forum-selection clause. In step one, the court determines whether the forum selection clause is "contractually valid." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 571 U.S. 49, 62 n. 5 (2013). In step two, the court conducts an analysis under § 1404(a) to determine whether any other factors show that it would be in the interest of justice to disregard the forum selection clause and decline to transfer the case. *Id.* at 63.

The court's consideration of factors under step two is circumscribed. For example, the court may not consider "private interests," such as the convenience of the parties. *Id.* at 64. Rather, the court may consider public interest factors only, such as the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 645 (7th Cir. 2022). And even for public interest factors, the court's discretion is limited: public interest factors will not defeat a forum-selection clause unless those factors clearly favor the other district. 571 U.S. at 52. More generally, the court must enforce the forum-selection clause except in "unusual," "exceptional," and "extraordinary circumstances." *Id.* at 52, 60, 64.

In this case, there is a strong argument that the burden on Westwood to defeat the forum-selection clause is even heavier than it was in *Atlantic Marine*. Normally, the plaintiff's

choice of forum is given some deference when considering transfer. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Courts may not give that choice any weight when the plaintiff is seeking to avoid a forum-selection clause, as was the plaintiff in *Atlantic Marine*, 571 U.S. at 63. But here, the plaintiffs acted in accordance with the forum-selection clause, and it is the defendant that is trying to avoid it. So Westwood must show that the public interest factors so strongly favor transfer to Georgia that they override both the forum-selection clause and the plaintiffs' choice of forum.

In its opening brief, Westwood ignores *Atlantic Marine* and subsequent cases applying it. This failure alone suggests that Westwood has not met its burden. But even if the court considers Westwood's arguments in its reply brief, the motion still fails.

Westwood asserts two arguments: (1) plaintiffs waived their right under the forum-selection clause; and (2) public interest factors favor transfer despite the clause.

### 1.  Waiver

Westwood first contends that *Atlantic Marine* is "irrelevant" because plaintiffs waived their right to enforce the forum-selection clause through their conduct in *H&L Farms*. Dkt. 21, at 2. The plaintiffs in *H&L Farms* owned property next to one of plaintiffs' solar projects in Georgia. The property owners alleged that sediment from the construction project would flow onto the property after a rainfall, polluting streams and a lake on the property. *H&L Farms*, 2023 WL 6973211, at *2. The property owners sued several defendants—including IEA Constructors, Infrastructure and Energy Alternatives, and Westwood—for negligence, nuisance, and trespass. *Id.* at *3. The jury found IEA Constructors and Infrastructure and Energy Alternatives liable, along with some other defendants, collectively awarding $ 10.5 million in compensatory damages and $125 million in punitive damages. *Id.* The jury acquitted

Westwood. *Id.* The court granted a motion for remittitur, *id.* at 1, but rather than accept a reduced award, the property owners opted for a new trial, which is scheduled for April 2025. Dkt. 12, at 9. Westwood says that, during the trial, IEA Constructors and Infrastructure and Energy Alternatives tried unsuccessfully to blame Westwood for the harm to the property owners in *H&L Farms* and that attempt qualifies as a waiver of plaintiffs' rights under forum-selection clause.

The court of appeals has recognized that a party can waive its rights under a forum-selection clause, *see Kass v. PayPal Inc.*, 75 F.4th 693, 699 (7th Cir. 2023), but it has not identified all the circumstances that qualify as a waiver. In *Sharpe v. Jefferson Distributing Co.*, 148 F.3d 676, 679–80 (7th Cir. 1998), and *Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir. 1995), the court held that a party could waive its rights by failing to assert the clause in a timely manner. In *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009), the court considered an argument that a party had waived a forum-selection clause by asserting a claim in a different venue, but the court did not need to address the merits of that argument because it concluded that the opposing party had "waived the waiver" through its own conduct.

For its part, Westwood relies on *Kawasaki Heavy Industries, Ltd. v. Bombardier Recreational Products, Inc.*, 660 F.3d 988, 994 (7th Cir. 2011), in which the court held that "there is a rebuttable presumption that the party has waived its right to arbitrate" when the "party chooses to proceed in a judicial forum." Westwood says that principle should be extended to forum-selection clauses, citing *McCoy v. Gamesa Technology Corp., Inc.*, No. 11 C 592, 2012 WL 245162, at *2 (N.D. Ill. Jan. 26, 2012), which held that "[a] rebuttable presumption arises that a party waived the right to enforce a forum selection clause where the party files a claim in a court different than the court mandated by the forum selection clause."

All of these cases stand for the general principle that a party may not choose to litigate a claim in one forum and then change forums partway through. But that is not what happened here. Plaintiffs did not sue Westwood in Georgia; both plaintiffs and Westwood were named as defendants there in a lawsuit filed by third parties. A waiver is an intentional relinquishment of a right. *Haber*, 578 F.3d at 558. Plaintiffs did not choose to be sued.

If plaintiffs had filed a crossclaim against Westwood in Georgia, Westwood would have a stronger argument that plaintiffs waived their right to enforce the forum-selection clause for that claim. Westwood acknowledges that plaintiffs did *not* assert any crossclaims in *H&L Farms*, but it says that the court should treat plaintiffs as if they had because they "urged the jury to determine Westwood violated the standard of care and find it responsible for the claimed damages." Dkt. 12, at 3. Westwood cites statements that plaintiffs' counsel made to the court and to the jury in which counsel stated that the harm to the property owners was caused by Westwood's poor design rather than by plaintiffs' failure to properly implement that design. *Id.* at 4–5.

Westwood does not cite any authority or any legal principle supporting a conclusion that the cited statements qualify as a waiver of the parties' forum-selection clause. Again, plaintiffs did not choose to be sued. They were entitled to present a theory regarding why they were not negligent, including that they relied on Westwood's plan. If the court or the jury in *H&L Farms* decided issues that overlap with this case, that would be a ground for applying issue preclusion. But asserting a defense is not a ground for finding waiver of a forum-selection clause.

### 2. Public interest

Westwood also contends that the following public interest factors support a transfer to Georgia:

- plaintiffs already "prosecuted" their "claims" in Georgia, Dkt. 21, at 9;

- keeping the case in Wisconsin will increase court congestion;

- the court will have to apply Georgia law;

- some potential witnesses are located in Georgia;

- the Middle District of Georgia is already familiar with the issues in this case;

- the solar projects at issue are located in Georgia.

None of these factors, either individually or collectively, permit the court to disregard the forum-selection clause.

As for Westwood's contention that plaintiffs "prosecuted" their "claims" in Georgia, this is based on plaintiffs' counsel's statements in *H&L Farms* suggesting that Westwood's negligence caused the harm to the property owners. As already discussed, plaintiffs did not assert any claims against any party in *H&L Farms*. Even if the jury had found that Westwood was negligent, plaintiffs would not have recovered a penny from Westwood based on that verdict. Plaintiffs still would have needed to sue Westwood separately. And even if plaintiffs had asserted a crossclaim for indemnification against Westwood in *H&L Farms*, plaintiffs' claims in this case are much broader than that; they relate to three other projects that were not at issue in *H&L Farms*.

As for court congestion, the question is which court would be likely to resolve the claim sooner. *In re Ryze Claims Solutions, LLC*, 968 F.3d 701, 710 (7th Cir. 2020). That factor counsels *against* transfer because Westwood waited almost seven months after it removed the

case before moving to transfer the case, and it offers no reason for the delay. The summary judgment deadline is in October 2024. If the court were to transfer the case now, the transferee court would have to reset the schedule, likely leading to significant delays.

Westwood's argument about congestion is not about speed. Rather, it is an argument about plaintiffs' motion for leave to amend its complaint to drop any claims arising out of *H&L Farms*. Specifically, Westwood says that plaintiffs want to dismiss those claims without prejudice to refiling them after the new trial and any appeals are concluded in *H&L Farms*, which will lead to inefficiency. That issue has nothing to do with whether plaintiffs' claims should proceed in this court or in Georgia, so it is irrelevant to the motion to transfer. The court will consider that issue in the context of plaintiffs' motion for leave to amend their complaint.

As for Westwood's contention that a Georgia court will be more familiar with Georgia law, Westwood does not respond to plaintiffs' contention that the parties' agreement includes a choice-of-law provision that will require the court to apply Wisconsin law. Dkt. 13, at 13. Westwood says in its reply brief that the standard of care on plaintiffs' negligence claims will be informed by "the Georgia regulations of Stormwater Design Manual and Georgia Manual for Sediment and Erosion Control." Dkt. 21, at 5. Even if that is correct, Westwood does not explain why it believes that a federal court in Georgia is likely to have expertise in obscure regulations. In any event, *Atlantic Marine* rejected the view that choice of law plays a significant factor in the analysis, reasoning that "federal judges routinely apply the law of a State other than the State in which they sit." 571 U.S. at 67.

As for the location of witnesses, Westwood does not identify in its opening brief any witnesses in this case who reside in Georgia. In its reply belief, Westwood lists several people

that it says are potential witnesses who reside in Georgia. But it does not cite any evidence either that any party has identified those individuals as potential witnesses or that any of the witnesses currently reside in Georgia. So this factor does not support transfer.

As for the Georgia court's familiarity with the issues in this case, Westwood has not shown that there will be substantial overlap in this case with the issues litigated in *H&L Farms*. This case is about Westwood's duties to plaintiffs under both tort law and contract law across four different projects. *H&L Farms* was about plaintiffs and Westwood's duties to a third party under tort law related to one portion of one of the projects at issue in this case. Westwood does not contend that any issue decided in *H&L Farms* is preclusive in this case.

This is not to say the two cases are wholly unrelated; evidence from *H&L Farms* about both sides' negligence could also be relevant to this case. So this factor may tip toward Georgia. But any efficiency that would be gained by allowing the Georgia court to decide this case is offset at least in part by Westwood's substantial delay in bringing its motion to transfer.

This leaves Georgia's status as the location of all the projects at issue. Westwood says that gives Georgia a strong interest in the dispute. That was certainly true in *H&L Farms*, which involved harm to Georgia property owners. But Westwood does not identify any connections that the parties in this case have with Georgia, other than the projects themselves. None of the parties or their members have a principal place of business in Georgia, and none of them were incorporated or otherwise formed under Georgia law. IEA Constructors is a Wisconsin company with a principal place of business in Indiana; Infrastructure and Energy Alternatives is a Delaware company with a principal place of business in Indiana, and Westwood is a Minnesota company with a principal place of business in Minnesota. Westwood does not

explain why Georgia has a strong interest in determining whether one of out-of-state entity breached a contract or acted negligently with respect to another out-of-state entity.

To sum up, some factors of a traditional § 1404 analysis point toward Georgia as being a more appropriate forum for deciding this case. But that is not enough to override a forum-selection clause, particularly in a situation like this one in which Westwood waited so long to seek transfer. In *Ryze*, the court emphasized how rare it is for courts to disregard a forum-selection clause. 968 F.3d at 711–12. The few examples the court identified either involved an extreme delay by the party asserting the clause or a situation in which enforcing the clause would have required severing the case. *Id.* Neither situation applies here, and Westwood has not otherwise shown that this is one of the "unusual" or "exceptional" cases involving "extraordinary circumstances" allowing this court to override the parties' agreement regarding the choice of forum for this dispute. The court will deny the motion to transfer.

## B. Plaintiffs' motion for leave to amend the complaint

Plaintiffs' original complaint included a claim that plaintiffs were entitled to indemnification against Westwood for costs incurred by plaintiffs because of *H&L Farms*. Plaintiffs move to dismiss that claim on the ground that it is not ripe: the judgment has been vacated, and a new trial on damages is scheduled for April 2025, so any damages arising out that lawsuit cannot be determined until a new judgment is entered, and any appeals are resolved.

Under Federal Rule of Civil Procedure 15(a)(2), the court may grant leave to amend a pleading "when justice so requires." A court may deny leave to amend when there is a good

reason to do so, including futility, undue delay, prejudice, or bad faith. *White v. Woods*, 48 F.4th 853, 860 (7th Cir. 2022).[1]

Westwood says that amendment would be both futile and unfairly prejudicial. As for futility, the test is whether the claims in the new complaint state a claim. *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022). Plaintiffs seek to remove a claim, not add one, so futility is not at issue. Westwood does not contend that any of plaintiffs' original claims do not state a claim upon which relief may be granted.

As for prejudice, Westwood says that dismissing the claims now will allow plaintiffs to reassert them at a later date in a different lawsuit. That is not an argument for denying leave to amend; rather, it is an argument for making amendment contingent on dismissing the removed claims with prejudice rather than without prejudice. Westwood does not say that it has expended time and resources on the claim that plaintiffs wish to dismiss. Regardless, Westwood itself asserts in its motion to transfer that plaintiffs' claims based on *H&L Farms* are not ripe because that case remains pending:

> [T]here is no ability to affix a price tag to that demand until the damages retrial occurs, and the subsequent appeal is resolved. This equates to years of additional litigation in Georgia and the Eleventh Circuit, considering the retrial (still a year away) and the inevitable appeals to follow.

---

[1] Westwood says that plaintiffs need to show "good cause" because a scheduling order is in place. That contention rests on Federal Rule of Civil Procedure 16(b)(4), which says that a "schedule may be modified only for good cause and with the judge's consent." But plaintiffs are not asking to modify the scheduling order, so Rule 16 does not apply. In any event, the scheduling order makes it clear that the court will apply Rule 15, not Rule 16, to motions for leave to amend, Dkt. 11, at 1, as this court has said in multiple cases. *See, e.g., SSI Techs., LLC v. Dongguan Zhengyang Elec. Mech. Ltd.*, No. 20-cv-19-jdp, 2020 WL 6081737, at *5 (W.D. Wis. Oct. 15, 2020); *Sanchelima Int'l, Inc. v. Walker Stainless Equip. Co., LLC*, No. 16-cv-644-jdp, 2017 WL 3499350, at *1 (W.D. Wis. Apr. 17, 2017).

Dkt. 12, at 10. This is consistent with case law holding that a claim under an indemnity agreement is not ripe until the amount the indemnitor must pay is determined. *See Chernin v. International Oil Co.*, 261 Wis. 543, 545, 53 N.W.2d 425, 426 (1952).

The court cannot force a party to litigate a claim that has not accrued, and the court cannot dismiss such a claim with prejudice. Dismissals for lack of ripeness are generally without prejudice. *See Harris v. Quinn*, 656 F.3d 692, 701 (7th Cir. 2011). So the court will grant the motion for leave to amend and dismiss plaintiffs' claims based on *H&L Farms* without prejudice.

ORDER

IT IS ORDERED that:

1. Defendant Westwood Professional Services, Inc.'s motion to transfer, Dkt. 12, is DENIED.

2. The motion for leave to amend filed by IEA Constructors, LLC and Infrastructure and Energy Alternatives, Inc., Dkt. 15, is GRANTED. Plaintiffs' claims based on *H&L Farms LLC v. Silicon Ranch Corporation*, No. 21-cv-134 (M.D. Ga.) are DISMISSED without prejudice. Plaintiffs are directed to promptly file their amended complaint as a separate docket entry.

Entered August 9, 2024.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

13