IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

IEA CONSTRUCTORS, LLC, and
INFRASTRUCTURE AND ENERGY
ALTERNATIVES, INC.,

     Plaintiffs,

  v.

WESTWOOD PROFESSIONAL SERVICES, INC.,

     Defendant.

OPINION and ORDER

23-cv-588-jdp

---

Plaintiffs IEA Constructors, LLC and Infrastructure and Energy Alternatives, Inc. were general contractors for four utility-scale solar projects. Plaintiffs allege that defendant Westwood Professional Services, Inc., a subcontractor, prepared deficient plans for stormwater management and sediment control, causing damages in the form of costs to investigate and repair the defects.

Expert discovery is set to close April 6, and pretrial deadlines are approaching soon after. Dkt. 68. Pending now on the docket is a motion to compel filed by plaintiffs, Dkt. 75, and a motion for excused absence, Dkt. 80, filed by one of defendant's counsel. For the reasons discussed, the motion to compel is GRANTED in part and DENIED in part, and the motion for excused absence is GRANTED with conditions, imposed below.

## DISCUSSION

### A. Motion to compel

The motion to compel has two parts. As to the first, plaintiffs move to compel more specific responses to their third requests for production. The parties mostly agree on the facts

leading up to this dispute:  Plaintiffs took defendant's corporate deposition via two designees in mid-December.  During their depositions, the designees testified about documentation that contained calculations that defendant made during its work on the projects.  A week or so later, plaintiffs served a third set of requests for production that sought this documentation.  Dkt. 77-1.  This third set contains five requests—Requests Nos. 23-27—with numerous subparts. Each seeks "All Documents, including calculations, data, spreadsheets, electronic files, analyses, and supporting documentation . . ." related to different aspects of the projects, including soil borings (No. 23), subcatchments, temporary sediment basins, common drainage areas, baffles in sediment basins, sizing of spillways, characteristics of pipes at full flow, dimensions of aprons (No. 24), concrete riser bases, anti-seep collar features (No. 25), other stormwater management design elements (No. 26), and the principal spillway (No. 27).

Defendant initially responded to these requests in late January.  It objected to the requests on work product and privilege grounds but otherwise did not object to the requests. Nor did defendant state that it was withholding documents based on privilege or other reasons. Rather, defendant asserted for each request that it "has produced its project files in previous productions."  Dkt. 79-4.  Plaintiffs sent a letter in early February, insisting that defendant must identify responsive documents for each individual request.  Dkt. 77-1.  Defendant responded with their own letter, directing plaintiffs to "all HydroCAD and AutoCAD files for the project." Dkt. 77-5. After a meet and confer, defendant sent plaintiffs a spreadsheet listing close to 3,000 files, which apparently represent every file produced by defendant in this litigation bearing a certain file extension. Dkt. 77-6. After another meet and confer, plaintiffs filed the instant motion, asking the court to compel defendant to specifically identify which

2

files respond to each document request or "admit the documents either never existed or no longer exist." Dkt. 75 at 2.

Rule 34(b)(E) governs the production of documents or electronically stored information:

> (i) A party must produce <u>documents</u> as they are kept in the usual course of business <u>or</u> must organize and label them to correspond to the categories in the request;
>
> (ii) If a request does not specify a form for producing <u>electronically stored information</u>, a party must produce it in a form or forms in which it is ordinarily maintained <u>or</u> in a reasonably usable form or forms; and
>
> (iii) A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(E) (emphasis added). Courts are divided on whether subsection (i) and subsection (ii) each apply to both documents and electronically stored information or whether subsection (i) is specific to documents (as it states) and subsection (ii) is specific to electronically stored information (as it states). *ExactLogix, Inc. v. JobProgress. LLC*, No. 18 CV 50213, 2020 WL 13220038, at *2 (N.D. Ill. Apr. 7, 2020) (collecting cases). But the court doesn't have to decide this point today because both subsection (i) and (ii) are satisfied when materials are produced as they are kept in the ordinary course of business/as they are ordinarily maintained, and that is how the materials in this dispute were produced.

Plaintiffs insist that defendant's production is not satisfactory because it requires them to dig through the documents and find what they characterize as a needle in a haystack. To the extent this is so, plaintiffs have the tools to accomplish this. The materials in dispute were produced in electronic format, allowing plaintiffs to search and query them. See Dkt. 76 at 7 (describing actions plaintiffs have done to filter and search defendant's document production).

3

If there were questions about the materials, plaintiffs could have propounded interrogatories to answer those questions or marked the materials as exhibits and asked witnesses about them in depositions. And to the extent the information required expert interpretation, plaintiffs have had ample time to retain experts in this case. Attempting to elicit answers to substantive questions and/or admissions to definitive statements via requests for production is not an appropriate or productive way to conduct discovery.

Permeating all of these points is the age of the case—which is quite advanced. Disputes on the sufficiency of document productions are best aired at the beginning of the discovery period so they do not interrupt later discovery. Sometimes late-breaking disputes are unavoidable, but the court is not persuaded that this dispute falls into that category. Discovery has been open since 2023, Dkt. 11, and after various modifications to the schedule, it closed January 30, 2026, Dkt. 50. The parties were warned to attend to discovery diligently and bring motions promptly if self-help fails. Dkt. 11 at 3. Filing a discovery motion after the discovery period has closed will rarely qualify as prompt. There are good reasons for enforcing this procedure—it helps bring the record to a close, providing the parties and the court some certainty, and it allows the parties and the court to turn the page to the next stage in the case, here, trial. Even if the rules required the type of identification plaintiffs seek, the court would find this motion too late.

All that said, defendant has represented that responsive documents to each of these requests were produced and provided a spreadsheet listing a group of files that defendant contends contains the responsive documents. Because plaintiffs and the court now have relied on these representations, they should be formalized for possible use at trial. For this reason, defendant is ORDERED to supplement their responses to Requests for Production Nos. 23-27

4

to formalize their representations and to verify them under oath. Whether and how this information could be used at trial is a question for another day, to be decided by Judge Peterson. The supplement is due April 3, 2026. This portion of the motion is otherwise DENIED.

The second part of plaintiffs' motion to compel concerns the attempted "claw back" of an alleged privileged document inadvertently produced by plaintiffs and later used at a deposition. The parties, again, mostly agree on the facts of this dispute: Plaintiffs produced a draft version of an e-mail in discovery. Because the e-mail did not have the "to" or "from" lines filled in, plaintiffs' privilege protocol did not flag the e-mail, and it was produced. Final versions of the e-mail, however, did have the "to" line filled in with attorneys' names, and thus these final versions were flagged and withheld as privileged.

During a January 15 deposition of one of plaintiffs' witnesses, defendant's counsel marked the draft email as an exhibit and used it with the witness. Defendant's counsel did not provide plaintiffs' counsel with a copy of the exhibit during the deposition, although it was displayed on a screen for review. Plaintiffs' counsel did not object on privilege grounds, although they did object because the exhibit appeared to be missing metadata, including the "to" / "from" fields. About a week later, on January 22, defendant's counsel used the exhibit with another witness at another deposition. This time, a copy was provided to plaintiffs' counsel, and counsel objected on privileged grounds. The next morning, on January 23, plaintiffs invoked the "claw back" provision in the parties' confidentiality agreement, Dkt. 77-10, asking defendant to destroy its copies of the draft e-mail. Defendant refused. This motion followed.

The "claw back" provision at issue is part of an agreement the parties entered into for this litigation. They agreed that inadvertent production of privileged material would not result in waiver of that privilege. Dkt., ¶ 6. They agreed to return and destroy any privileged material inadvertently produced within five business days of the request. *Id.*, ¶ 7. And they agreed that if the receiving party disagrees with a claim of privilege, the receiving party must present the disagreement to court. *Id.*, ¶ 9. The agreement does not expressly provide a deadline for the receiving party to present the disagreement to the court, but it is reasonable to read a five-day deadline into this provision because that is the deadline for the receiving party to return the material. The receiving party must either return and destroy the material as requested or raise the issue with the court—one or the other within five days of the claw back notice.

Defendant apparently did neither of these things. It did not return or destroy the material as requested. Nor did it raise the issue with the court, within five days of plaintiffs invoking the claw back provision or ever. Rather, it took no action at all. Defendant confusingly claims that it "did the latter," Dkt. 79 at 15, but this issue is before the court on plaintiffs' motion, not defendant's. If defendant wanted to keep the draft email after receiving a claw back notice on January 23, it should have filed a motion with the court on or before January 28. It didn't. On these facts alone, defendant is in violation of the parties' agreement, and the court would be justified in granting the motion.

Beyond this point, the court finds reason to enforce the claw back provision. As a threshold matter, defendant repeatedly cites Fed. R. Evid. 502 throughout its brief, but this rule does not govern this dispute because the parties entered into their own agreement governing their conduct upon the inadvertent production of privileged material. This agreement does not contemplate the reasonableness of the parties' production protocols, so

Rule 502 and the cases that defendant cites applying it are inapposite. The court presumes that the parties brokered their own agreement because they believed a departure from the default rule was beneficial and appropriate. Having entered into the agreement, defendant must now abide by it.

Defendant speculates that production of the draft email was "deliberate" because it was redacted to remove the "to" / "from" fields. This is entirely speculative and belied by the record. A reasonable review of the record reveals that the email was not redacted but, rather, was missing information because it was a draft that was not fully populated. That the final version with populated fields was withheld supports this inference and the court's ultimate conclusion that the draft version was inadvertently produced.

Defendant argues that plaintiffs' conduct was not reasonable, either in producing the email in the first instance or clawing it back after the fact. Again, the protections to which the parties agreed in their claw back provisions were unqualified by the need to take reasonable steps in reviewing and producing materials—a deliberate choice the parties made that the court will not un-do. And the steps that plaintiffs took to claw back the email were not so unreasonable as to waive these agreed-upon protections. Defendant emphasizes that plaintiffs' counsel failed to object at the January 15, and this normally would give the court pause, but this is excusable given that defendant's counsel failed to provide plaintiffs' counsel with their own copies of the exhibits at the deposition—something the court has already explained is the expectation. See Dkt. 63. When copies were provided, counsel objected. This portion of the motion is GRANTED.

### B. Motion for excused absence

Defendant's lead counsel has requested that the court grant her an excused absence for family events falling in April and maternity leave expected to run from May through August. This court ordinarily does not formally grant leaves of absence. When an attorney is counsel of record, the court expects the attorney to attend to the deadlines and make arrangements to have them covered if the attorney expects other obligations, either personal or professional, to present a conflict. Here, the court has worked extensively with the parties to craft a case schedule that takes these particular absences into account. That is why trial moved, Dkt. 48, and there are "no maters presently scheduled in court during" the dates listed in counsel's motion, Dkt. 80. But even if there are no in-person appearances scheduled, the court fully expects the other attorneys on defendant's trial team to cover lead counsel's absence. The court will be actively working on this case heading into trial and new deadlines may be imposed. Defendant must be prepared to keep up with the case and meet new deadlines, even in lead counsel's absence. There have been months to plan for these absences, and the court has worked with the parties to account for them, so the court expects them to have little impact on the case. With these expectations made clear, the court GRANTS the motion.

ORDER

IT IS ORDERED that:

1. Plaintiffs' motion to compel, Dkt. 75, is GRANTED in part and DENIED in part, as set forth above.

2. Defendant's counsel's motion for excused absence, Dkt. 80, is GRANTED.

3. The parties bear their own costs on these motions.

Entered March 31, 2026.

BY THE COURT:

/s/

_____
ANITA MARIE BOOR
Magistrate Judge