IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

IEA CONSTRUCTORS, LLC, and
INFRASTRUCTURE AND ENERGY
ALTERNATIVES, INC.,

|  |  |
|---|---|
| Plaintiffs, | OPINION and ORDER |
| v. | 23-cv-588-jdp |
| WESTWOOD PROFESSIONAL SERVICES, INC., | |
| Defendant. | |

---

This case arises out of large solar projects at four sites in Georgia: Perry, Clay, Lumpkin, and Fort Valley. Plaintiff IEA Constructors, LLC was a general contractor for these projects. IEA Constructors hired defendant Westwood Professional Services, Inc. to prepare plans for stormwater management and sediment control. IEA alleges that Westwood's design plans were deficient and did not comply with their contract or the permit that governed the contract, resulting in uncontained soil erosion. The other plaintiff, Infrastructure and Energy Alternatives, Inc., is a third-party beneficiary to the agreement between IEA Constructors and Westwood. The parties refer to the two plaintiffs collectively as IEA, so the court will do the same.

Plaintiffs assert claims for breach of contract, professional negligence, and indemnification. IEA seeks damages for the costs of redesigning new plans and then implementing them, among other things.

The case is scheduled for trial on August 31. This order addresses the parties' motions in limine, resolving most of them and identifying other issues that require further discussion.

ANALYSIS

## A. IEA's motions in limine

### 1. Motion to exclude Jeremy McMillen's testimony

Jerry McMillen is a civil engineer who offers opinions that Westwood designed the temporary sediment basins for each of the four projects in accordance with the permit and applicable standards such as the Manual for Erosion and Sediment Control in Georgia, which the parties call the "Green Book."

All expert testimony must comply with the five requirements in Federal Rule of Evidence 702:

1) the witness is qualified as an expert by knowledge, experience, training, or education;

2) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

3) the testimony is based on sufficient facts or data;

4) the testimony is the product of reliable principles and methods; and

5) the expert has reliably applied the principles and methods to the facts of the case.

*See Burns v. Sherwin-Williams Co.*, 78 F.4th 364, 373 (7th Cir 2023). The court of appeals has distilled these requirements into three questions: (1) is the expert qualified to give the testimony at issue? (2) did the expert use a reliable method to reach his or her conclusions? and (3) is the expert testimony relevant? *See Gopalratnam v. Hewlett-Packard Co.,* 877 F.3d 771, 779 (7th Cir. 2017).

IEA's challenges to McMillen's testimony in this motion fall primarily within the first two requirements, qualifications and reliability.

### a. Qualifications

IEA does not dispute any of the qualifications listed in McMillen's CV, which shows that he has more than 20 years of civil engineering experience, including experience in "land development and stormwater design for residential, commercial, industrial, and military projects." Dkt. 127-2, at 2.[1] But IEA contends that McMillen is not qualified to offer opinions about compliance with the permit and the Green Book for the following reasons:

- The permit is governed by Georgia law, but McMillen got his Georgia certification four days before submitting his report.

- He has not performed work on utility-scale solar projects before.

- He has not performed engineering design work since 2013, instead focusing on forensic consulting.

- He does not have the certifications necessary to design Erosion, Sedimentation and Pollution Control plans in Georgia.

- He does not have experience applying the Georgia legal standards that are incorporated into the permit.

These objections fall primarily into two categories: (1) McMillen does not specialize in some of the issues relevant to the case; and (2) McMillen is not expert in Georgia permit regulations. Neither objection is supported by the law.

It is well established in this circuit that "[a]n expert's specialization or lack thereof typically goes to the weight to be placed on her opinion, not its admissibility." *Anderson v. Raymond Corporation*, 61 F.4th 505, 509 (7th Cir. 2023) (citing *Hall v. Flannery*, 840 F.3d 922,

---

[1] Citations to documents filed on the docket reflect the page numbers as they appear on the headers in the court's electronic case file, not the page numbers on the documents themselves.

929 (7th Cir. 2016), and *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010)). IEA identifies

no reason that McMillen's lack of experience with solar projects or projects in Georgia matter.

For example, IEA does not suggest that the relevant engineering principles are substantially

different for solar projects or for projects in Georgia. IEA also cites no rule suggesting that an

expert must have recent experience doing the thing the expert is testifying about. IEA identifies

no relevant engineering principles that have changed since 2013.

As for McMillen's lack of previous experience with Georgia permitting requirements, it

is true that the contracts and permits in this case were based on Georgia regulations and

standards. But IEA does not explain why that matters either. McMillen is an engineer, not an

expert on regulations or permits. By IEA's own assertion, questions about the meaning of the

permit or regulations should be decided by the court, not an expert.

The court overrules IEA's objection based on McMillen's qualifications.

### b. Reliability

IEA raises the following objections about the reliability of McMillen's opinions:

- He did not provide calculations or written analysis to support an opinion that

  the designs for the Clay and Lumpkin projects satisfied the sediment storage

  requirements.

- With respect to the same opinion, McMillen's calculation for the size of the

  disturbed area is different from Westwood's design plans, but McMillen does

  not account for the difference in his report.

4

- McMillen did not explain how he validated the inputs he used to determine the average slope for each drainage area.[2]

IEA's first argument is about McMillen's opinion that Westwood's design plans for the Lumpkin and Clay projects provide sediment storage for 67 cubic yards per disturbed acre, as required by the Green Book. Dkt. 83-3, at 19, 32. Westwood does not dispute that McMillen's report does not provide a basis for that opinion, it is just a conclusion. In his deposition, McMillen acknowledged that Westwood's plans do not provide for 67 cubic yards of storage in the form of basins, but he said that the storage requirement is "handled by the other BMPs [best management practices] that were designed to be installed on the site." Dkt. 127-3, 71:7–23; *see also id.* at 164 ("The other BMPs that were installed would have provided sediment storage for all the disturbed areas.").

When counsel asked McMillen the basis for that opinion, he responded as follows:

> I have no written analysis of that. As I went through the site areas that did not have [sediment storage basins] I did the calculation in my head of what we would have for disturbed area and 67 acres and let the other BMPs handle that.

*Id.* at 3–7. When counsel asked McMillen whether he was "just shooting from the hip," McMillen gave this answer:

> I did not shoot from the hip, I used good engineering judgment and good standards to look at those with the standard of care to ensure that we have an area that was not going to hold the sediment that's required. I don't have a written documentation or a spreadsheet to send to you, no.

*Id.* at 167:13–23.

---

[2] IEA's motion is framed more broadly as seeking to strike all of McMillen's opinions as unreliable, but the opinions identified above are the only opinions that IEA discusses in its brief, so the court will limit its consideration to those opinions.

An expert must provide the foundation for his opinions in the report. He may not supplement his opinions in his deposition. *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008). But even McMillen's deposition falls short. An expert may not rely on "calculation[s] in [his] head." And "good engineering judgment" is not a method that survives scrutiny under Rule 702. So the court will exclude McMillen's opinions that Westwood's design plans for the Lumpkin and Clay projects provide sediment storage for 67 cubic yards per disturbed acre, as required by the Green Book. Dkt. 83-3, at 19, 32.

IEA's second argument challenges the same opinion on different grounds, so it is not necessary to consider that argument. IEA does not connect its third argument to any opinion in McMillen's report. Rather, IEA criticizes McMillen's deposition testimony. Again, it is McMillen's report, not his deposition testimony that matters, so IEA has forfeited this issue by failing to identify an opinion in the report that it wants to strike.

### 2. Motion to exclude McMillen's testimony on legal issues

IEA seeks to exclude testimony on several of McMillen's opinions that IEA characterizes as legal opinions or opinions based on an incorrect legal premise:

1. "The Green book states that 'the total drainage of a temporary sediment trap is up to 5 acres.' The Westwood plan statement on the plans that 'temporary basins are required where anticipated disturbance which drains to a common point exceeds 5 acres' is justified." Dkt. 83-3, at 9.

2. "Based on the GA100001 permit and Greenbook, the interpretation of Westwood that 67 cubic yards of sediment storage is required per acre of disturbed area is reasonable." *Id.* at 10, 20, 21, 34, 47.

3. "The temporary sediment basins on the site are designed in accordance with the Greenbook." *Id.* at 19.

4. "It is the general contractor's responsibility to coordinate the activities of the site construction to mitigate interference." *Id.* at 23.[3]

IEA's motion rests on the view that experts may not testify on legal issues. That is true as a general principle: "Experts generally may not testify on pure issues of law, such as the meaning of statutes or regulations." *Antrim Pharm. LLC v. Bio-Pharm, Inc.*, 950 F.3d 423, 430–31 (7th Cir. 2020). But the prohibition is not categorical: "courts have permitted regulatory experts to testify on complex statutory or regulatory frameworks when that testimony assists the jury in understanding a party's actions within that broader framework." *Id.*

In a case like this involving technical permitting standards, it is conceivable that an expert's specialized knowledge could be useful in interpreting a permit. But that is not what McMillen is purporting to do in the quoted statements. Rather, the first two statements are simply assertions that Westwood's interpretations of the Green Book and permit are "reasonable" and "justified." He does not purport to be relying on engineering expertise to support his opinions. So the court will exclude those opinions.

The third opinion is different. McMillen is offering the opinion that Westwood's designs for sediment basins comply with the Green Book. There is no rule against an expert offering an opinion about whether a party complied with a legal standard. *See Jimenez v. City of Chicago,* 732 F.3d 710, 721-22 (7th Cir. 2013). By IEA's own assertion, the primary question

---

[3] IEA frames its motion more broadly as seeking to exclude all "legal" opinions, but these are the only opinions IEA identifies in its motion, so the court will limit its consideration to those opinions.

in this case is whether Westwood's designs complied with various standards under Georgia law. In fact, that is the subject of the report of IEA's own liability expert, Randy Strunk Dkt. 82-4, at 12 ("The review was conducted to evaluate whether the project designs met the applicable Georgia standard of care for engineering design, as defined under Rule 180-6, the Georgia Erosion and Sedimentation Act of 1975, the State General Permit (GAR100001), and where applicable, the Georgia Stormwater Management Manual (Blue Book)."). The court will not exclude this opinion as an improper legal opinion. IEA does not challenge McMillen's opinion on the ground that it is unreliable or lacks foundation, so the court does not consider that issue.

The fourth opinion—that it is "the general contractor's responsibility to coordinate the activities of the site construction to mitigate interference"—is not identified on its face as an interpretation of a legal standard. McMillen does not explain how he determined what the general contractor's responsibilities are. Regardless, it is not an engineering opinion, so it falls outside McMillen's expertise. The court will exclude that opinion and any opinion that about what a party's "responsibilities" were. That is to be established through the contract, permit, and other authorities.

### 3. Motion to exclude Jason Ball's testimony as untimely

Jason Ball is a civil engineer who offers opinions that IEA did not properly install, maintain, or inspect the erosion and sediment control measures that Westwood designed. Dkt. 84-2. IEA seeks to exclude Ball's testimony as untimely. IEA points to the court's January 30, 2026 scheduling order, which imposed a February 27, 2026 deadline for "proponent expert reports" and a March 13, 2026 deadline for "respondent expert reports." Dkt. 68. The court previously explained that "the party bearing the burden of proof on an issue must disclose any expert opinion on that issue by the proponent deadline" and "the party not bearing the burden

of proof on an issue must disclose any expert opinion on that issue by the respondent deadline." Dkt. 50. Ball submitted his report on March 13. IEA says that was untimely because Ball's opinions relate only to issues of contributory negligence or alternative causation, which are both affirmative defenses on which Westwood bears the burden of proof. IEA also says that the untimely report was prejudicial because the court prohibited a third round of reports, so IEA cannot respond to Ball's report.

Westwood does not meaningfully respond to IEA's argument that Ball's opinion is solely about potential contributory negligence by IEA, so Westwood should have submitted Ball's report on February 27. Westwood says installation, maintenance, and inspection "are important aspects of the Project design," Dkt. 130, at 5, but even if that is correct, it is not clear why it matters. The bottom line is that Ball's report is devoted to showing that IEA was negligent, and Westwood has the burden on that issue. *See Glassey v. Cont'l Ins. Co.,* 176 Wis. 2d 587, 599, 500 N.W.2d 295, 300 (1993); *Helmbrecht v. St. Paul Ins. Co.*, 122 Wis. 2d 94, 121, 362 N.W.2d 118, 132 (1985); *McGuiggan v. Hiller Brothers*, 214 Wis. 388, 392, 253 N.W. 403, 405 (1934). Here If Westwood was uncertain, it should have sought clarification from the court rather than simply blow past the deadline.

Westwood also says little in response to IEA's argument that IEA is prejudiced because it did not have the opportunity to respond to Ball's report. In a footnote, Westwood says that IEA should have expected that Westwood would submit a report from Ball because Westwood named Ball as an expert in the Georgia case. Dkt. 130, at 9 n.2. But IEA was entitled to rely on the disclosures that Westwood provided in this case. Even if IEA could have anticipated that Ball would submit a report, IEA could not respond to a report it did not have until it was

9

too late to file a response. Westwood does not suggest that any prejudice could be ameliorated by allowing IEA to submit a rebuttal report now, so the court does not consider that issue.

The court concludes that Ball's report was untimely. But the court need not decide whether any prejudice could be cured because Ball's report does not survive scrutiny under Rule 702, as the court will discuss in the next section.

### 4. Motion to exclude Jason Ball's testimony as inadmissible

IEA objects to the substance of Ball's report on numerous grounds, including that it includes no engineering analysis, does not explain how Ball reached his conclusions, and consists mostly of a collection of photographs and quotations of other sources.

IEA is correct that there is little analysis in Ball's report. The report is 179 pages, but the first 162 pages are devoted to a summary of the historical facts and the documents governing the projects (such as the permit and the Green Book), along with descriptions of numerous photographs. None of that is expert testimony. Rather, fact witnesses with personal knowledge can provide that information, so it is not helpful. *Burns*, 78 F.4th at 374 (expert may not offer testimony when "a factfinder is equally able to assess" the issues addressed by the expert).

Pages 163 to 179 of the report are titled "Analysis and Conclusions," but even that section of the contains little analysis. Rather, most of it is more non-expert description of what IEA did or did not do, often citing deposition testimony of other witnesses. Again, that type of testimony should be presented by fact witnesses with personal knowledge.

Ball also includes observations about what some photographs show, but he does not accompany that observation with any expert opinion or explanation. *See, e.g.*, Dkt. 84-2, at 166 ("IEAC's drone photographs taken in June 2021 indicate issues with BMP maintenance and

siltation runoff that were not remediated prior to the following rain event."); *id.* at 170 ("[T]he photographs show areas that were not being actively worked and left exposed for extended periods of time."). Expert testimony often is not needed to describe a photograph. *See Burns*, 78 F.4th at 374 (excluding expert testimony describing photographs because "[t]he photos speak for themselves"). There are some situations in which an expert could use his expertise to describe images that a lay person would not understand. But Westwood identifies no such opinions in Ball's report.

Of the opinions that Ball does provide, some of them fall outside Ball's engineering expertise. For example, Ball says that IEA should have flagged questions it had about the design for Westwood and should have notified Westwood about any problems IEA uncovered during inspections. Dkt. 84-2, at 169, 177–78. But opinions about what IEA was "responsible" for or what IEA's "obligations" were are not a matter of engineering expertise, so Ball may not offer those opinions.

Ball also offers opinions about what the permit, Field Manual, and Green Book required IEA to do. But there is no indication in the report that Ball used his engineering expertise to interpret those requirements. *See, e.g.*, Dkt. 84-2, at 169 ("The General Permit's maintenance requirements do not include exceptions for difficult access or convenience."); *id.* at 170 ("The General Permit Part IV.D.3.a requires that the ground surface be stabilized 'soon as practicable in portions of the site where construction activities have temporarily or permanently ceased, but in no case more than 14 days after the construction activity in that portion of the site has temporarily or permanently ceased.'"). So the court will exclude these opinions.

Ball does offer a few conclusions about the importance of sediment control measures:

- "Perimeter sediment controls and basins are critical in providing the ability to retain sediment on site as land-disturbing activities commence." Dkt. 84-2, at 165.

- "Topsoil helps establish vegetative growth in disturbed areas, which is particularly beneficial in establishing growth in the soil types encountered across the four solar sites. If the existing topsoil on site is not saved, topsoil would need to be hauled into the site to help establish vegetation growth." *Id.* at 170.

- "Vegetation growth after erection of the solar arrays becomes more difficult than prior to their presence due to a lack of sunlight and limited ability to access the areas, when needed." *Id.* at 171.

- "[G]round disturbance from trenching, equipment movement, installation, etc. associated with the array construction inhibits vegetation growth." *Id.*

- "The lack of widespread site stabilization and a lack of vegetation growth prior to and during construction of the arrays are primary contributors to erosion and sedimentation issues reported across the four solar sites." *Id.*

But these are just general principles and conclusions. Ball does not explain how he reached those conclusions or how they apply to IEA. *See Downing v. Abbott Laboratories*, 48 F.4th 793, 809 (7th Cir. 2022) (affirming exclusion of expert testimony because expert "does not substantively discuss the methodology she used" and "[t]he connection between the data in the report and [the expert's] opinions exists only by the ipse dixit of her as the witness") (internal quotation marks omitted); *Zamecnik v. Indian Prairie School Dist. No. 204*, 636 F.3d 874, 880–81 (7th Cir. 2011) (excluding expert testimony because the expert "fails to indicate, however sketchily, how he used his expertise to generate his conclusion"). In the beginning of

12

his report, Ball says that his methodology "was in accordance with scientific methodologies and applicable principles." Dkt. 84-2, at 14. But he does not identify any specific methodologies or principles. This is little different from cases in which the court of appeals has held that an expert may not simply invoke his "expertise" to support his opinion. *See Zenith Elecs. Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 419 (7th Cir. 2005).

Westwood does not identify any expert opinions by Ball that satisfy Rule 702. So the court will grant the motion to exclude Ball's testimony.

### 5. Motion to exclude references to *H&L Farms*

In *H&L Farms, LLC v. Silicon Ranch Corp.*, No. 21-cv-134 (M.D. Ga), the plaintiffs were property owners who lived near one of the four solar projects at issue in this case (the Lumpkin project). The plaintiffs sued the owners of the solar project, along with both IEA Constructors and Westwood, alleging that they had negligently failed to control erosion, causing significant amounts of silt and sediment to flow into the plaintiffs' lake. *Id.* Dkt. 171, at 3. Among other things, the special verdict form in *H&L Farms* asked the jury whether either IEA Constructors or Westwood had "committed negligence that caused injury to Plaintiffs." *Id.* Dkt. 276. The jury answered "no" as to Westwood and "yes" as to IEA Constructors. Judgment was entered on the jury's verdict. *Id.*, Dkt. 286. The court later vacated the judgment on the issue of damages and ordered a new trial on that issue only. *Id.* Dkt. 392, *id*. The parties settled before the new trial, so the case was dismissed. *Id.*, Dkt. 2.

IEA moves to exclude any references to *H&L Farms* as irrelevant and unfairly prejudicial. IEA also seeks to exclude references to the settlement under Federal Rule Evidence 408. Westwood does not respond to that part of the motion, so the court will grant it as unopposed.

13

Westwood opposes the motion as it relates to the *H&L Farms* trial, contending that the trial is relevant because it "arises from the same set of facts and same underlying events" as this case. Dkt. 132, at 17. But Westwood does *not* contend in its opposition to this motion that it can satisfy the elements of either claim or issue preclusion, so it has forfeited that argument for the purpose of this motion.

Regardless, preclusion does not apply. *H&L Farms* was decided under Georgia law, which means that Georgia preclusion rules apply. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 506–09 (2001) (federal court applies forum state's laws on preclusion when previous case was in federal court based on diversity jurisdiction). Claim preclusion does not apply because that doctrine does not apply to different claims brought by different parties. *See Sanders v. Trinity Universal Ins. Co.*, 647 S.E.2d 388, 391 (Ga. Ct. App. 2007). IEA did not assert any claims against Westwood in *H&L Farms*, so the claims are not the same. And Westwood cites no authority for the view that IEA was required to file any claim in this case as a crossclaim in *H&L Farms*.

Issue preclusion applies under Georgia law when "an issue of fact or law is actually litigated and determined by a valid judgment, and the determination is essential to the judgment." *Dickerson v. Dickerson*, 545 S.E.2d 378, 380 (Ga. Ct. App. 2001). As an initial matter, there could be no preclusion related to three of the four projects at issue in this case because *H&L Farms* was about the Lumpkin project only. Even as to the Lumpkin project, the issues decided by the jury were not simply that IEA Constructors was negligent and Westwood was not. Rather, the jury found that IEA Constructors "committed negligence that caused injury to Plaintiffs" and that Westwood did not "commit[] professional negligence that caused injury to Plaintiffs." No. 21-cv-134, Dkt. 276. Those issues might overlap with the issues in

14

this case, but they are not the same because the jury in this case will not be determining whether any of the parties caused harm to the plaintiffs in *H&L Farms*.

In the absence of preclusion, the Georgia jury's verdict is simply a lay opinion on a related but not identical issue. Allowing Westwood to discuss the verdict would potentially be both confusing and unfairly prejudicial. Confusing because the issues are not the same, so the court would have to allow IEA to put in the context of the jury's finding, leading to a trial-within-a-trial. Unfairly prejudicial because there is a risk that the jury would put undue weight on the Georgia jury's findings without conducting their own review of the evidence.

Westwood identifies no aspect of the *H&L Farms* trial that could be relevant and helpful to the jury in this case without causing confusion and unfair prejudice. So the court concludes that any probative value of evidence from *H&L Farms* is substantially outweighed by the risk of unfair prejudice. The court will grant the motion to exclude any references to *H&L Farms*.

6. **Motion to exclude evidence regarding installation and maintenance of best management practices**

IEA's basic theory of the case is that Westwood's plans for controlling erosion were defective, causing damages to IEA. Westwood's basic theory of the case is that IEA's damages were the result of IEA failing to properly implement the plans. The parties refer to the implementation process as "best management practices," which is the term used in the governing contract, permit, and state regulations.

IEA moves to exclude evidence about best management practices "that were performed prior to substantial completion of the four projects at issue in this litigation," contending that such evidence is irrelevant. Dkt. 87, at 1. IEA does not clearly explain why it believes this is so, but three possibilities are suggested in its brief: (1) "IEA is not claiming any damages that

15

occurred prior to substantial completion of any Project," *id.* at 2; (2) Westwood certified that IEA implemented all best management practices before substantial completion of the projects, *id.* at 4 ("Westwood . . . verified that all the BMPs it designed were installed by IEA."); and (3) IEA is seeking damages only for the cost of bringing designs into compliance with the contract and the permit, not for consequential damages related to property damage that may have been caused by the defective designs, *id.* at 6 ("[T]he designs would have to be changed regardless if they did not meet the requirements of the Permit, regardless of how well the BMPs were constructed").

If IEA's argument is simply that it is not seeking damages incurred before substantial completion of the projects, it does not necessarily follow that evidence of any negligence by IEA during that time is irrelevant. The question would be whether IEA's own negligence before completion contributed to damages incurred after completion. That would be a question of fact for the jury to determine.

If IEA's argument is that Westwood already admitted that IEA implemented the best management practices before completion of the projects, that might be impeachment evidence that IEA could offer at trial. But IEA does not contend that any representations Westwood made would qualify as legally binding admissions, so the jury would have to decide how much weight to give those representations.

If IEA's argument is that its damages are limited to the costs related to bringing defective plans into compliance with the permit, the court would agree that any negligence by IEA in implementing the original plans would be irrelevant. If Westwood's designs did not comply with the permit, and IEA needed compliant designs in order to complete the project, then IEA

16

would have incurred the costs associated with fixing those plans regardless of how faithfully IEA implemented those designs.

But IEA's damages do not appear to be so limited. The report of IEA's damages expert, Wiley Wright, includes a category for "erosion control and mitigation," which includes subcategories for things like "storm damage remediation." Dkt. 138-1, at 17–18, 26–27, 33. This suggests that IEA is seeking damages not just for the costs of bringing the projects into compliance with the permit and contract but also to remediate property damage that IEA alleges was caused by defects in Westwood's plans. Westwood is entitled to submit evidence attempting to show that such harm was caused by poor implementation by IEA rather than defective design plans. So the court will deny this motion.

### 7. Motion to exclude evidence of design review

IEA seeks to exclude evidence that IEA or third parties reviewed or approved Westwood's plans. IEA says that its contract with Westwood made Westwood solely responsible for the design plans, so it is irrelevant whether anyone else approved them or failed to object to them.

In response, Westwood does not dispute that it was solely responsible for preparing the plans. But it says that "its process, as well as the processes of Plaintiffs and the owner, in getting to the final design" are relevant for two reasons: (1) "even if there were technical errors in the plans, that does not mean Westwood violated the standard of care"; and (2) "discussion regarding its process and the various level[s] of review, both internally and externally, of the design before it was stamped and adopted are an important component of the analysis of whether Westwood violated the standard of care." Dkt. 132, at 23–24.

17

Westwood's first reason is not responsive to the motion, which has nothing to do with whether "technical errors" violate the standard of care. So the court need not consider that argument. Westwood's second reason is conclusory and unhelpful. Westwood does not identify any specific evidence it wants to introduce, and it does not explain how any "discussion" of its "process" or "levels of review" helps to inform whether it violated the standard of care.

The court will grant this motion.

8. **Motion to exclude expert testimony of any witness who did not submit an export report**

The court will grant this motion as unopposed.

9. **Motion to exclude evidence about arbitration proceedings between IEA and SR EPC LLC[4]**

The court will grant this motion as unopposed. In its response, Westwood says that it "agrees in principle" with the motion but asks that "correspondence . . . discuss[ing] the at-issue projects as well as other projects . . . remain intact." Dkt. 132, at 24. Westwood does not identify any specific exhibits or explain how references to "other projects" are relevant, so the court cannot rule on Westwood's request. If Westwood believes specific evidence discussing the arbitration proceedings should be admitted, it will have to identify those during the final pretrial conference.

---

[4] The title of IEA's motion refers more generally to "unrelated disputes," but the arbitration between IEA and SR EPC is the only dispute IEA discusses in its motion, so the court will limit its ruling to that issue.

10. **Motion to exclude evidence of other projects between the parties and IEA's "corporate structure"**

IEA seeks to exclude evidence on two distinct issues: "(1) other projects or contracts between the parties unrelated the Projects at issue in this case, and/or (2) IEA's corporate size or national presence." Dkt. 94, at 1. IEA identifies no specific "projects or contracts" that it believes should be excluded. But Westwood does not oppose the motion, so the court will grant it.

Westwood includes the following caveat in its response: "[T]hroughout discovery, documents have revealed numerous companies operating under the MastTec umbrella (including IEA) were involved in these projects. To ensure the jury understands all of those entities relate back to IEA, Westwood requests the ability to address the connections of those companies for purposes of judging bias and/or credibility of witnesses." Dkt. 132, at 25. The issue Westwood is raising falls outside the scope of IEA's motion, which has nothing to do with the different entities involved in the four projects at issues in this case. Regardless, Westwood does not identify specific evidence or explain how that evidence shows bias or lack of credibility, so the court cannot consider Westwood's request.

B. **Westwood's motions in limine**

1. **Motion to exclude references to insurance carriers**

The court will grant this motion as unopposed.

2. **Motion to preclude arguments by counsel about a witness's credibility**

Westwood moves to preclude counsel from "vouching" for a witness's credibility. Dkt. 92, at 3. The court will grant this motion as unopposed. But this does not preclude counsel

19

from explaining during closing arguments why he or she believes a witness is credible or not credible based on evidence submitted during trial.

### 3. Motion to exclude demonstrative exhibits from jury deliberations

The court will grant this motion as unopposed.

### 4. Motion to preclude "golden rule" arguments

Westwood seeks to preclude any arguments from IEA's counsel that jurors should put themselves in IEA's position. The court will grant this motion as unopposed.

### 5. Motion to limit theory of negligence to professional negligence

IEA agrees that its theory of negligence is limited to professional negligence, so the court will grant this motion as unopposed. IEA raises a different issue in its response, which is that Westwood's proposed jury instructions misstate the standard of care for a professional negligence claim. The court will resolve that issue in the context of drafting the jury instructions.

### 6. Motion to exclude evidence or argument about "best practices"

Westwood says that the relevant question for a professional negligence claim is whether the defendant exercised the standard of care ordinarily exercised by the members of that profession, *see Milwaukee Partners v. Collins Engineers, Inc.*, 169 Wis. 2d 355, 362, 485 N.W.2d 274, 277 (Ct. App. 1992), and that the court should exclude evidence of "best practices" because "best practices" are not the standard of care.

Westwood is correct that a professional's conduct can meet the standard of care even if that conduct is not a "best practice." *See Lacy v. McArdle*, No. 20-cv-1014-jdp, 2023 WL 4581759, at *13 (W.D. Wis. July 18, 2023). So IEA will not be permitted to argue that Westwood was negligent because it did not follow "best practices." But Westwood's motion is

too vague for the court to provide any further guidance. Westwood identifies no specific evidence it wants to exclude, and it cites no authority for the view that evidence of best practices is irrelevant in determining the standard of care or that there is no admissible purpose for which evidence of best practices may be admitted.

The court will deny this motion. If Westwood objects to specific evidence about "best practices," it may raise that objection during the final pretrial conference.

### 7. Exclude expert testimony that falls outside the expert's expertise

The court will grant this motion as unopposed, but the motion is not helpful. Again, Westwood does not identify specific testimony that it objects to. And Rule 702 itself makes clear that an expert may not testify about issues on which he or she does not have expertise. So ruling that experts may not offer testimony outside their expertise provides no additional guidance.

### 8. Exclude testimony of lay witnesses who lack personal knowledge

This is another unhelpful motion. It is well established that lay witnesses may only testify about matters within their personal knowledge, Fed. R. Evid. 701, and Westwood identifies no specific testimony that it seeks to exclude. So the court will grant the motion, but doing so does not help to resolve any disputed issues. If Westwood has an objection to specific lay testimony, it will have to raise that issue during the final pretrial conference or during trial.

### 9. Motion to exclude documents not produced in discovery

The court will deny this motion without prejudice. Westwood identifies no specific documents it wants to exclude, so it is impossible for the court to determine whether any failure to produce evidence was substantially justified or harmless under Rule 37. Excluding all unproduced evidence would also be premature because evidence used only for impeachment

does not have to be introduced before trial. Fed. R. Civ. P. 26(a)(3). If either party believes that the other is trying to introduce evidence at trial that was not previously disclosed and is not being used solely for impeachment, that party may raise an objection during the final pretrial conference or trial.

### 10. Motion to preclude use of depositions during opening statements

The court will grant this motion as unopposed.

### 11. Motion to exclude evidence about IEA's redesign plans

Westwood says that IEA may try to rely on IEA's "redesign plans" to support a claim that Westwood' original plans were deficient. Westwood says that any reliance on new plans would violate Federal Rule of Evidence 407, which limits evidence about subsequent remedial measures.

Rule 407 provides:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> • negligence;
>
> • culpable conduct;
>
> • a defect in a product or its design; or
>
> • a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures.

The text of Rule 407 does not make its application contingent on which party made the subsequent remedial measure. But the court of appeals has held that Rule 407 does not apply "when the evidence is offered against a party . . . which did not make the changes." *Lolie v. Ohio*

*Brass Co.*, 502 F.2d 741, 744 (7th Cir. 1974). In this case, Westwood did not make the remedial changes, so under *Lolie*, Rule 407 does not apply.

In any event, IEA does not say that it intends to use the redesign to show negligence. Rather, the new designs are part of IEA's *damages* case. Specifically, IEA intends to put in evidence regarding the cost of the redesign. Rule 407 expressly allows parties to put in evidence of subsequent remedial measures "for another purpose," so the court will deny this motion.

## 12. Motion to preclude IEA from shifting the burden of proof

Westwood asks to preclude IEA from "stat[ing], argu[ing], or impl[ing] in voir dire, opening statements, during evidence, or in closing arguments, that Defendant must prove that they did not cause the issues complained of by Plaintiffs, or that Defendant did not cause Plaintiffs' damages." Dkt. 92, at 8. IEA opposes this motion, but it does not dispute that it has the burden to prove all of its claims. It contends that Westwood has the burden to prove affirmative defenses such as contributory negligence, but Westwood does not argue to the contrary. So the court will grant this motion as unopposed.

## 13. Motion to exclude references to settlement discussions

This is yet another unhelpful motion because neither side identifies any evidence to exclude or admit. Rule 408 prohibits introducing evidence of settlement negotiations for some purposes but not others. So the court cannot grant this motion without knowing what evidence is at issue, or for what purpose it is being offered. If either side intends to offer any evidence from settlement negotiations, that party should identify during the final pretrial conference what that evidence is and for what purpose it is being offered.

23

### 14. Motion to restrict voir dire questioning

Westwood moves to strike any voir dire questions that ask jurors to prejudge the case or give a legal opinion. The court will consider these issues in the context of reviewing both sides' proposed voir dire questions and objections.

### 15. Motion to exclude evidence about other cases, settlements, or verdicts

The court will grant this motion as unopposed.

### 16. Motion to exclude evidence of costs incurred to comply with *H&L Farms* injunction

After the jury in *H&L Farms* found that IEA had caused damage to a property near the Lumpkin site, the court enjoined IEA to remediate the damage. No. 21-cv-134 (M.D. Ga), Dkt. 318. Westwood contends that IEA should be precluded from seeking damages for complying with the injunction under the doctrine of issue preclusion. Specifically, Westwood contends that the jury in *H&L Farms* already found that Westwood was not professionally negligent, so it cannot be required to pay those costs.

As an initial matter, IEA has disclaimed any damages related to the harm caused to the plaintiffs in *H&L Farms*. Am. Cpt., Dkt. 25, ¶ 4 ("IEAC and IEA do not make any claims against Westwood for indemnification in this lawsuit arising from damages claimed by the plaintiffs in *H&L Farms*."). So that necessarily limits the potential implications of the *H&L Farms* injunction. But the injunction goes beyond just repairing damage to the plaintiffs' property; it also required IEA to create new design plans, and IEA is seeking damages for that on all four projects, including the Lumpkin project.

As discussed in the context of IEA's motion to exclude evidence about *H&L Farms*, issue preclusion applies under Georgia law when "an issue of fact or law is actually litigated and

24

determined by a valid judgment, and the determination is essential to the judgment." *Dickerson*, 545 S.E.2d at 380. IEA contends that issue preclusion does not apply for two reasons: (1) there was no final judgment in *H&L Farms*; and (2) the issues are not the same in both cases.

The court need not resolve the first question because it has already concluded that the issues decided in *H&L Farms* were not the same as in this case. *See supra* at 13–15. Specifically, the jury did not determine that Westwood was not negligent in *H&L Farms*; the jury determined that the plaintiffs in *H&L Farms* failed to prove that any negligence by Westwood was the proximate cause of those plaintiffs' injuries.

### 17. Motion to exclude testimony of Wiley Wright

Wiley Wright is IEA's damages expert. He is a certified public accountant. Westwood moves to exclude all of Wright's testimony, and its arguments fall into two categories: (1) he did not provide a foundation for finding that Westwood's design was defective and that the design caused Westwood's damages, instead assuming both things; (2) he did not exclude costs related to complying with the injunction in *H&L Farms*.

Neither of these objections requires extended discussion. As for Westwood's objection that Wright did not provide foundation for finding that Westwood's designs caused IEA's damages, that is not a basis for exclusion because Wright is an accountant, not an engineer, so he would not be qualified to offer an opinion about whether Westwood's designs were defective or what harm the defective design caused. If Westwood's view were the law, every damages expert would also have to be an expert on any liability issue implicating damages. Westwood

25

cites no authority for that view, and it makes no sense. Rather, the consensus view in this circuit is that a damages expert may assume liability.[5]

Westwood does not identify a basis for challenging the reliability or admissibility of Wright's *economic* analysis, which is the only analysis that matters. Of course, IEA will have to prove negligence and causation with other evidence, but Westwood does not challenge the admissibility of IEA's liability experts.

As for failing to exclude the costs of complying with the *H&L Farms* injunction, the court already addressed that issue in the context of deciding Westwood's motion in limine 16: the injunction does not have preclusive effect in this case because the issues in *H&L Farms* and this case are not the same.

ORDER

IT IS ORDERED that:

1.  The court rules on IEA's motions in limine as follows:

    a.  The motion to exclude Jerry McMillen's testimony, Dkt. 82, is GRANTED in part and DENIED in part. McMillen may not offer an opinion that Westwood's design plans for the Lumpkin and Clay projects provide sediment storage for 67 cubic yards per disturbed acre. The motion is otherwise denied.

    b.  The motion to exclude McMillen's testimony on legal issues, Dkt. 83, is GRANTED in part and DENIED in part. McMillen may not offer the following opinions: (1) the Westwood plan statement on the plans that 'temporary basins are required where anticipated disturbance which

---

[5] *See, e.g.*, *Sonrai Sys., LLC v. Romano*, No. 16 CV 3371, 2024 WL 4265182, at *8 (N.D. Ill. Sept. 23, 2024); *Chartwell Studio, Inc. v. Team Impressions, Inc.*, No. 19-CV-06944, 2023 WL 1992180, at *7 (N.D. Ill. Feb. 14, 2023); *Telebrands Corp. v. My Pillow, Inc.*, No. 18-CV-06318, 2021 WL 4125108, at *5 (N.D. Ill. Sept. 9, 2021); *Hess v. Biomet, Inc.*, No. 3:16-CV-208 JD, 2019 WL 5965172, at *11 (N.D. Ind. Nov. 13, 2019); *Sys. Dev. Integration, LLC v. Computer Scis. Cor*p., 886 F. Supp. 2d 873, 882 (N.D. Ill. 2012).

drains to a common point exceeds 5 acres' is justified; (2) based on the GA100001 permit and Greenbook, the interpretation of Westwood that 67 cubic yards of sediment storage is required per acre of disturbed area is reasonable; (3) any opinion about the legal responsibilities of any entity. The motion is otherwise denied.

c. The motion to exclude Jason Ball's testimony as untimely, Dkt. 84, is DENIED as moot.

d. The motion to exclude Jason Ball's motion under Rule 702, Dkt. 85, is GRANTED.

e. The motion to exclude any reference to *H&L Farms, LLC v. Silicon Ranch Corp.*, No. 21-cv-134 (M.D. Ga), Dkt. 86, is GRANTED.

f. The motion to exclude evidence regarding installation and maintenance of best management practices, Dkt. 87, is DENIED.

g. The motion to exclude evidence of design review, Dkt. 88, is GRANTED.

h. The motion to exclude expert testimony from any expert who did not submit an expert report, Dkt. 89, is GRANTED as unopposed.

i. The motion to exclude evidence about arbitration proceedings between IEA and SR EPC LLC, Dkt. 91, is GRANTED as unopposed.

j. The motion to exclude evidence of other projects between the parties and IEA's corporate structure, Dkt. 94, is GRANTED as unopposed.

2. The court rules on defendant's motions in limine as follows:

a. The motion to exclude references to insurance carriers, Dkt. 92, is GRANTED.

b. The motion to preclude arguments by counsel about their personal beliefs of a witness's credibility, Dkt. 92, is GRANTED as unopposed.

c. The motion to exclude demonstrative exhibits from jury deliberations, Dkt. 92, is GRANTED as unopposed.

d. The motion to preclude "golden rule" arguments, Dkt. 92, is GRANTED as unopposed.

e. The motion to limit the theory of negligence to professional negligence, Dkt. 92, is GRANTED as unopposed.

f.  The motion to exclude evidence and argument about "best practices," Dkt. 92, is GRANTED in part and DENIED in part. The parties may not argue that the other violated the standard of care by failing to meet best practices. The motion is otherwise denied without prejudice.

g.  The motion to preclude experts from offering opinions outside their expertise, Dkt. 92, is GRANTED as unopposed.

h.  The motion to exclude lay testimony that is not based on personal knowledge, Dkt. 92, is GRANTED as unopposed.

i.  The motion to exclude evidence that was not produced during discovery, Dkt. 92, is DENIED without prejudice.

j.  The motion to preclude use of depositions during opening statements, Dkt. 92, is GRANTED as unopposed.

k.  The motion to exclude evidence about IEA's redesign plans, Dkt. 92, is DENIED.

l.  The motion to preclude IEA from arguing that Westwood has the burden to prove that it was not negligent, Dkt. 92, is GRANTED.

m.  The motion to exclude evidence of settlement discussion, Dkt. 92, is DENIED without prejudice.

n.  The motion to restrict voir dire, Dkt. 92, is DENIED. The court will consider the appropriate scope of voir questions in the context of drafting those questions.

o.  The motion to exclude evidence about other cases, settlements, or verdicts, Dkt. 92, is GRANTED as unopposed.

p.  The motion to exclude evidence of costs incurred to comply with the *H&L Farms* injunction, Dkt. 92, is DENIED.

28

q.  The motion to exclude Wiley Wright's testimony, Dkt. 90, is DENIED.

Entered June 9, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge