IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

IEA CONSTRUCTORS, LLC, and
INFRASTRUCTURE AND ENERGY
ALTERNATIVES, INC.,

               Plaintiffs,

    v.

WESTWOOD PROFESSIONAL SERVICES, INC.,

               Defendant.

OPINION and ORDER

23-cv-588-jdp

---

This case is scheduled for trial in August 2026. Plaintiffs IEA Constructors, LLC and Infrastructure and Energy Alternatives, Inc. (collectively, IEA) move for sanctions against defendant Westwood Professional Services, Inc. under Federal Rule of Civil Procedure 37, alleging that Westwood intentionally withheld what IEA describes as "highly relevant" text messages until May 8, more than two months after the close of discovery. IEA also seeks sanctions because Westwood produced a large number of documents related to Westwood's experts without explaining what the documents were. IEA asks for three types of sanctions: (1) strike Westwood's affirmative defense for contributory negligence; (2) allow IEA to re-depose witnesses implicated in the newly closed documents; and (3) award expenses caused by the untimely production.

The court will grant the motion in part and deny it in part. Westwood has no valid excuse for the delay in producing the text messages, so the court will allow IEA to re-depose the witnesses identified in the text messages and will shift expenses for the depositions and for this motion. But striking Westwood's defense would not be a proportional response because there is no evidence that Westwood was trying to hide the text messages, and any prejudice

can be cured before trial. The court will also deny IEA's request to sanction Westwood for the large document production related to experts. It is undisputed that those documents were simply duplicates of documents previously produced, and Westwood told IEA that shortly after producing the documents.

## ANALYSIS

### A.  Scope of motion and legal standard

IEA's sanctions motion is based on two things: (1) Westwood delayed production of text messages between witnesses about issues in this case; and (2) Westwood produced a large number of documents without identifying what they were, including 150 photographs that had not been produced before.

IEA seeks sanctions under Rule 37(b)(2), which applies when a party "fails to obey an order to provide or permit discovery." IEA does not identify what order Westwood violated, but presumably it is Magistrate Judge Boor's January 30, 2026 order setting February 20 as the deadline for completing discovery. Dkt. 68. Both sides agree that Rule 37(b)(2) provides the relevant standard.

Under Rule 37(b)(2)(C), the court "must" order "the disobedient party" to "pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." The rule also lists other possible sanctions, including "prohibiting the disobedient party from supporting or opposing designated claims or defenses." Fed. R. Civ. P. 37(b)(2)(A)(ii). But potential sanctions are not limited to those listed. *See* Fed. R. Civ. P. 37(b)(2)(A) (sanctions "may include" those listed in the rule). "[T]he district court has primary responsibility for selecting

an appropriate sanction," *Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 670–71 (7th Cir. 1996), but "the judge must be guided by the norm of proportionality that guides all judicial applications of sanctions." *Newman v. Metro. Pier & Exposition Auth.*, 962 F.2d 589, 591 (7th Cir. 1992). Relevant factors include the party's level of culpability, whether the violation is part of a pattern, and the amount of prejudice to the opposing party and the court. *See id.* But the moving party need not show bad faith. *Melendez*, 79 F.3d at 671.

The court will apply this standard to both of the alleged violations and then consider an appropriate sanction.

## B. Text messages

IEA says that on May 8 Westwood produced 434 text messages between its employees on Microsoft Teams. Westwood does not dispute that the documents in the May 8 production were responsive to discovery requests that IEA served in October 2024, but it offers two excuses for failing to produce the text messages sooner: (1) initially, defense counsel did not realize that Westwood's IT staff did not search for Teams messages; and (2) after it became clear during December 2025 depositions that responsive Teams messages should exist, defense counsel began gathering responsive documents, but "the sheer volume of messages exchanged" made the process of culling messages time intensive, and defense counsel was busy with "depositions all over the country and preparing pre-trial submissions." Dkt. 167, at 5.

Neither of these excuses show that defense counsel's failure to comply with the scheduling order was substantially justified. It is defense counsel's obligation to ensure that non-legal staff assisting with document production know the scope of the assignment, and it is defense counsel's obligation to ensure that any discovery responses are complete. Defense

3

counsel does not explain why they did not review the documents to confirm that Westwood was producing all responsive documents.

Defense counsel also does not provide a valid excuse for taking more than four months to produce the 434 text messages after learning in December 2025 that responsive Teams messages had not been produced. The court understands that reviewing documents takes time and that defense counsel had other demands on their time. But defense counsel knew that the discovery deadline was fast approaching, so that meant defense counsel needed to make this task a high priority. At the very least, defense counsel should have promptly notified the court if it believed that it could not comply with the discovery deadline, so that the court could order appropriate relief. Defense counsel offer no specific evidence to support their assertion that they provided IEA with responsive documents "as quickly as possible." Dkt. 167, at 6.

That being said, it is not clear why IEA waited so long to file this motion. IEA admits that it knew in December 2025 that Teams messages should have been produced. But IEA waited until May 28 to seek relief. It is true that Westwood produced two subsets of text messages in February 2026, but IEA does not contend that Westwood lulled IEA into believing that those text messages represented a complete response. Even after Westwood provided a complete response in May, IEA waited another three weeks to file its motion. Westwood should have moved to compel promptly. If it had, this issue could have been resolved much sooner.

But IEA's delay in seeking relief does not excuse defense counsel's failure to comply with the scheduling order. Defense counsel have not shown that their delay was substantially justified, so the court will shift fees on this motion. The fault appears to lie with defense counsel themselves, so defense counsel will be responsible for the fees.

4

The remaining question is whether to impose other sanctions. IEA asks for two other sanctions: (1) a second round of depositions of witnesses who sent or received the text messages produced on May 8; and (2) striking Westwood's affirmative defense for contributory negligence.

After IEA filed its reply brief, Westwood filed what it calls a "stipulation" to allow witnesses who sent or received any of the newly disclosed text messages to be deposed again. Dkt. 174. The court agrees that allowing those witnesses to be re-deposed is reasonable and fair. Westwood does not say whether it agrees to pay IEA's expenses in taking those depositions, but it follows that defense counsel should pay because two rounds of depositions would not have been needed if defense counsel had provided a complete response in 2024.

The court will not strike Westwood's contributory negligence defense because that would not be a proportional response. IEA identifies two newly disclosed messages that it says undercut Westwood's defense because they compliment IEA's efforts on implementing best management practices.[1] In its motions in limine, IEA represented that "Westwood . . . ultimately verified that all the BMPs [best management practices] it designed were installed by IEA," Dkt. 87, at 4, so it is not clear whether the messages reveal anything that IEA did not already know. Regardless, IEA has those messages now, and any prejudice caused by not having them sooner can be cured through a second round of depositions.

---

[1] IEA does not provide copies of the messages themselves, but IEA quotes a message from Joseph Ridley that IEA was "killing it out there" with respect to site stabilization at the Clay site in March 2022 and a message from Alex Knicker that IEA "is following our plans and doing amazing at stabilization!!" Dkt. 166, at 13. IEA also cites a message from Megan Droogsma about the legal requirements for Westwood's design plans, *id.* at 14, but that has nothing to do with Westwood's contributory negligence defense, so it would not make sense to strike the defense in response to the late disclosure of that message.

IEA says that it was prejudiced in four other ways that cannot be cured by simply re-deposing the author of the message: (1) it was unable to use the messages to cross examine Westwood's expert witnesses; (2) it could not incorporate the messages into its own experts' analysis; (3) it could not use them in a dispositive motion; and (4) it could not use them in IEA's pre-trial filings. But IEA does not provide examples or other details of *how* it could have used the text messages for any of these purposes, and the court does not discern any meaningful way they could have been. The text messages are not from experts, so they have little relevance to an expert opinion. And the court struck Westwood's contributory negligence expert, Dkt. 175, at 8–13, so any inability to question him is a moot issue. IEA did not file a dispositive motion, and it does not explain how any of the newly disclosed messages would have allowed it to do so. The messages IEA cites are essentially impeachment evidence; IEA does not explain how they show that IEA is entitled to judgment as a matter of law on any issue. IEA also does not explain how it would have relied on the text messages in any pretrial filing.

Regardless of prejudice, IEA says that a strong sanction is warranted because it is reasonable to infer that Westwood intentionally withheld the text messages. But IEA has no evidence of this, and the theory makes no sense. Westwood's production was untimely, but the text messages were produced nearly four months before trial, giving IEA plenty of time to use the messages for trial. IEA identifies no logical reason why Westwood would intentionally withhold evidence only to voluntarily disclose the evidence when IEA could still make use of it. This created the worst of both worlds for Westwood: it opened the door for a sanctions motion like the one IEA filed while still giving IEA potentially helpful evidence that it could use at trial. So it is not reasonable to infer that Westwood's delay was part of a strategy to hide evidence or hinder IEA's ability to prove its case.

To sum up, the court finds that defense counsel's failure to disclose the 434 text messages before the discovery deadline was not substantially justified or otherwise reasonable. The court will award the following sanctions:

1. Defense counsel must pay IEA's reasonable fees and costs in bringing the sanctions motions. The court will not award IEA its expenses in reviewing the discovery materials because IEA would have needed to do that regardless of when the documents were produced.

2. IEA will be allowed to re-depose any witness who sent or received one of the 434 messages. The depositions will be limited to the issues raised in the newly disclosed messages. Unless the parties agree otherwise, the depositions shall be taken via videoconference and shall last no longer than one hour. Defense counsel is responsible for IEA's reasonable fees and costs related to the depositions.

To account for the new evidence and new depositions, the court will make the following changes to the pretrial schedule:

1. IEA may have until June 17 to submit a revised exhibit list and to upload any new exhibits to Box.com. Westwood may have until June 24 to submit revised objections. Any new objections are limited to the new exhibits. When filing objections, Westwood must adopt the format of the court's Trial Exhibit Form on page 15 of the attachments to the preliminary pretrial conference order, Dkt. 11, so that the court can review all the exhibits and objections in one document. (Westwood did not do this for its original objections. *See* Dkt. 126.)

If Westwood has no objections to the new exhibits, it should still resubmit its objections to comply with the required form.

2. The new depositions should occur no later than July 20. If the parties wish to revise their deposition designations based on the new depositions, they may have until August 3 to submit revised designations, counter designations, and objections to the court in the same form described in Dkt. 119, at 2. Each deposition should include a key identifying which highlighted color goes with a party's designations or counter designations. The same one-hour limit per witness applies.

3. To preserve resources for trial preparation, IEA may defer submitting its fee and costs petition until after trial. Before IEA submits a fee petition to the court, it must confer with defense counsel on an appropriate amount, and any petition must be accompanied by a description of the efforts the parties made to resolve the amount of fees and costs without a court order. If the petition does not demonstrate that IEA made reasonable efforts to resolve the dispute, the court will deny the petition. The petition must also comply with the court's procedures on fee petitions, which are included in the attachments to the preliminary pretrial conference order, Dkt. 11.

## C. Failure to explain document production

At the same time that Westwood produced the 434 text messages, Westwood also produced 21,000 documents that were labeled "Expert File Production." Initially, IEA's main objection to this production was that it included 150 photographs that Westwood had not produced before. But in its reply brief, IEA does not dispute Westwood's representation that

there were no new documents in the production and that Westwood had produced the documents a second time simply to add Bates numbers to them. So IEA's objection to the 150 photographs is moot.

In its reply brief, IEA changes its focus, contending that Westwood should be sanctioned for wasting IEA's time. Specifically, IEA says that Westwood did not initially explain what the 21,000 documents were, so IEA had to expend time and resources reviewing them before eventually learning that there was nothing new in them.

The court will deny this aspect of IEA's sanctions motions for two reasons. First, IEA did not develop this argument in its opening brief, so it forfeited the issue. Second, the email chain between counsel shows that Westwood *did* tell IEA that the documents were simply previously produced documents with Bate stamps numbers added. Dkt. 166-3, at 7.

## ORDER

IT IS ORDERED that:

1. Plaintiffs' motion for sanctions, Dkt. 166, is GRANTED in part and DENIED in part. Plaintiffs will be allowed under the conditions described in the opinion to re-depose witnesses who sent or received the newly disclosed text messages. Defense counsel is required to pay plaintiffs' expenses for bringing the motion and for re-deposing witnesses. The motion is otherwise denied.

2. Plaintiffs may have until June 17, 2026, to submit a revised exhibit list as described in the opinion. Westwood may have until June 24, 2026, to file revised objections as described in the opinion.

3. The parties may have until August 3 to filed revised deposition designations, counter designations, and objections to designations as described in the opinion.

4.  The court will set a deadline after trial for plaintiffs to submit a fee petition.

Entered June 10, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge